<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| PERCELL L. BLAKENEY, | : | |
| | : | Civil Action No. 05-5278 (RBK) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| LEE PETERSON, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

PERCELL L. BLAKENEY, Plaintiff <u>pro</u> <u>se</u>
#32689
Salem County Correctional Facility
125 Cemetary Road
Woodstown, New Jersey 08098

**KUGLER**, District Judge

Plaintiff Percell L. Blakeney ("Blakeney"), a state pretrial detainee confined at the Salem County Correctional Facility in Woodstown, New Jersey, at the time he submitted this Complaint for filing, seeks to bring this civil rights action in forma pauperis under 28 U.S.C. § 1915(a). Based on his affidavit of indigence and current absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Blakeney's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons stated below, the Court finds that the Complaint should be dismissed.

## I.   BACKGROUND

The following factual allegations are taken from the Complaint and are accepted as true for purposes of this review.

Blakeney alleges that, on August 24, 2005, he was transported from Richmond, Virginia to the Salem County Correctional Facility in Woodstown, New Jersey, after waiving extradition to answer a charge of eluding the police.  The charge had been lodged against plaintiff by the Pennsville Police Department.  (Complaint, ¶ 1).

On August 25, 2005, Blakeney was taken to a room where the defendants, Chief Lee Peterson and Detective Rambo interrogated plaintiff.  A tape recorder was on the table in the room.  The defendants stated that they were from the Lower Alloways Police Department.  They accused plaintiff of committing a burglary.  Blakeney declined to answer any questions and asked to return to his cell.  The defendants made plaintiff sit there and threatened him that if plaintiff did not cooperate they would charge him with everything they could.  When Blakeney requested an attorney,

the defendants read plaintiff his <u>Miranda</u> rights and left the room.  (Compl., ¶¶ 2-6).

Blakeney was returned to his cell several hours later and learned that he had new criminal charges and an additional bond of $75,000 issued against him.  (Compl., ¶ 7).

A few days later, Blakeney was taken to a booking area where Detective Rambo had plaintiff processed on the new charges. During this time, Detective Rambo continued to interrogate plaintiff, making the same threats as before.  Blakeney informed the defendant that he was now represented by the Salem County Public Defender's Office and that plaintiff would not speak with Rambo without his attorney present.  Rambo left.  (Compl., ¶ 8).

The next week, Blakeney was brought to the jail's "professional visiting" room.  Rambo was there and again tried to interrogate plaintiff without counsel present.  Rambo said that plaintiff forgot to sign the <u>Miranda</u> cards from the other day. He made an offer to plaintiff, agreeing to drop the charges if plaintiff would cooperate.  Again, Blakeney declined to speak with Rambo without his attorney, and asked that he be permitted to leave.  (Compl., ¶ 8).

The next day, Blakeney was told to get ready to visit his attorney in the professional visiting room.  Plaintiff was taken there and locked inside.  Rambo walked in and Blakeney asked to leave.  Rambo allegedly told plaintiff that he "might as well

help [him]self, because [Rambo] already spoke to [his] girlfriend and she blames everything on [Blakeney].  Blakeney asked that Rambo stop bothering him because other inmates were beginning to call plaintiff a "snitch".  Blakeney was able to return to his cell after another guard interceded for him.  (Compl., ¶¶ 10, 11).

Blakeney then alleges that the next day, while he was eating lunch in the A-1 unit, a correctional officer told Blakeney that he had a telephone call from Social Rehabilitation, who wanted to know if plaintiff would talk to the police detective again.  Although Blakeney responded "no", he heard other inmates say or yell that plaintiff was a snitch.  Blakeney then wrote a complaint about concern for his safety.  (Compl., ¶¶ 12-13).

The following week, plaintiff asked his public defender to have the police stop the harassment.  On September 19, 2005, an officer gave Blakeney a copy of a new warrant from Detective Rambo, which allegedly informed plaintiff that the "complaining witness is a law enforcement officer and no judicial probable cause determination is needed."  Blakeney was charged with violating N.J.S. 2C:21-6c (credit card theft), in addition to his prior charges for theft and burglary.  Blakeney alleges that none of these warrants had a finding of probable cause for arrest.  (Compl., ¶¶ 14-17).

On September 27, 2005, plaintiff was told to get dressed for a visit, and was taken to a closet area in the detention unit. He was handcuffed to the closet where Detective Rambo stood. Rambo then told plaintiff that he had gone to Virginia to search plaintiff's car for stolen items and found some.  Rambo also told plaintiff that he found a passport belonging to a person now dead and that Rambo would have the matter investigated as a suspicious death involving Blakeney.  He encouraged plaintiff to cooperate. Blakeney noticed that Rambo had a concealed cell phone with a red activation light on.  When Blakeney pointed it out to Rambo, plaintiff was immediately removed.  Blakeney states that he has filed grievances with respect to Rambo's conduct.  (Compl., ¶¶ 18-21).

Blakeney asserts that the defendants violated his constitutional rights by having him arrested without probable cause, illegally detaining plaintiff without a finding of probable cause by a judicial officer, and conducting an illegal search and seizure of his property in another state.  Blakeney also claims that defendant Rambo smuggled in a cell phone to secretly record and transmit plaintiff's conversation, acted as plaintiff's attorney to trick plaintiff into coming to the visiting area for interrogation, made threats to plaintiff to induce his cooperation, and placed Blakeney's life in danger by causing plaintiff to be labeled as a snitch.

Blakeney seeks $500,000 from each defendant for punitive and compensatory damages.  He also seeks injunctive relief, asking that the illegally seized property be returned to plaintiff.

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.[1]

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must

---

[1]   Blakeney should also be aware that the PLRA requires Courts to determine whether a prisoner has, on three or more prior occasions while incarcerated or detained in any facility, brought an action or appeal in federal court that was dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted.  If so, the prisoner is precluded from bringing an action in forma pauperis unless he or she is under imminent danger of serious physical injury.  28 U.S.C. § 1915(g).  It does not appear that Blakeney has filed any lawsuits which were dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, at this time.

assume the truth of the allegations in the complaint and all
reasonable inferences that can be drawn therefrom, and view them
in the light most favorable to the plaintiff.  <u>Gibson v.
Superintendent of N.J. Dep't of Law & Pub. Safety-Division</u>, 411
F.3d 427, 431 (3d Cir. 2005).  The Court need not, however,
credit a <u>pro</u> <u>se</u> plaintiff's "bald assertions" or "legal
conclusions."  <u>Id.</u>

A complaint is frivolous if it "lacks an arguable basis
either in law or in fact."  <u>Neitzke v. Williams</u>, 490 U.S. 319,
325 (1989) (interpreting the predecessor of § 1915(e)(2), the
former § 1915(d)).  The standard for evaluating whether a
complaint is "frivolous" is an objective one.  <u>Deutsch v. United
States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A <u>pro</u> <u>se</u> complaint may be dismissed for failure to state a
claim only if it appears "'beyond doubt that the plaintiff can
prove no set of facts in support of his claim which would entitle
him to relief.'"  <u>Haines</u>, 404 U.S. at 521 (quoting <u>Conley v.
Gibson</u>, 355 U.S. 41, 45-46 (1957)); <u>Milhouse v. Carlson</u>, 652 F.2d
371, 373 (3d Cir. 1981).  However, where a complaint can be
remedied by an amendment, a district court may not dismiss the
complaint with prejudice, but must permit the amendment.  <u>Denton
v. Hernandez</u>, 504 U.S. 25, 34 (1992); <u>Alston v. Parker</u>, 363 F.3d
229 (3d Cir. 2004)(complaint that satisfied notice pleading
requirement that it contain short, plain statement of the claim

but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996). A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend.  Grayson, 293 F.3d at 106.

### III.  SECTION 1983 LIABILITY

Blakeney brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the

alleged deprivation was committed or caused by a person acting under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255–56 (3d Cir. 1994).  Here, there appears to be no question that the named defendants are persons acting under color of state law.

IV.  <u>ANALYSIS</u>

A.  <u>Unlawful Search and Seizure Claim</u>

Blakeney alleges that defendants violated his Fourth Amendment rights when his property was searched in Virginia and personal property was taken from his car as a result of an investigation of plaintiff on charges of theft and burglary.  It is not clear from the Complaint whether a warrant was first obtained.

The Fourth Amendment protects individuals against unlawful searches and seizures, providing that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

U.S. Const. Amend. IV.

To establish a claim under the Fourth Amendment, a plaintiff must show that the actions of the defendant: (1) constituted a "search" or "seizure" within the meaning of the Fourth Amendment, and (2) were "unreasonable" in light of the surrounding

circumstances.  See Brower v. County of Inyo, 489 U.S. 593, 595-600 (1989)(affirming two-fold analysis).

A seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property.  See Sodal v. Cook County, 506 U.S. 56, 61-65 (1992). Where the seizure of property is unreasonable, the Fourth Amendment is implicated.  Id. at 71.  However, the Supreme Court has held that "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application."  Bell v. Wolfish, 441 U.S. 520, 559 (1979).  The seizure must be scrutinized for its overall reasonableness under the circumstances with a careful balancing of governmental and private interests.  Sodal, 506 U.S. at 71.

Here, the Court must determine whether Blakeney may recover damages in a § 1983 suit on the basis of an allegedly illegal search and seizure while his state criminal proceedings precipitating the subject search and seizure are currently pending.  The Court first looks to Heck v. Humphrey, 512 U.S. 477 (1994), in which the Supreme Court barred any suit for damages premised on a civil rights violation if the basis for the suit is inconsistent with or would undermine the lawfulness of a conviction or sentence.  The Supreme Court held:

> [I]n order to recover damages for allegedly
> unconstitutional conviction or imprisonment, or for
> other harm caused by actions whose unlawfulness would
> render a conviction or sentence invalid, a § 1983

10

> plaintiff must prove that the conviction or sentence
> has been reversed on direct appeal, expunged by
> executive order, declared invalid by a state tribunal
> authorized to make such determination, or called into
> question by a federal court's issuance of a writ of
> habeas corpus, 28 U.S.C. § 2254.  A claim for damages
> bearing that relationship to a conviction or sentence
> that has not been so invalidated is not cognizable
> under § 1983.

512 U.S. at 486-87 (footnote omitted).  The Supreme Court further

instructed district courts, in determining whether a complaint

states a claim under § 1983, to evaluate whether a favorable

outcome would necessarily imply the invalidity of a criminal

judgment.

> Thus, when a state prisoner seeks damages in a § 1983
> suit, the district court must consider whether a
> judgment in favor of the plaintiff would necessarily
> imply the invalidity of his conviction or sentence; if
> it would, the complaint must be dismissed unless the
> plaintiff can demonstrate that the conviction or
> sentence has already been invalidated.  But if the
> district court determines that the plaintiff's action,
> even if successful, will not demonstrate the invalidity
> of any outstanding criminal judgment against the
> plaintiff, the action should be allowed to proceed, in
> the absence of some other bar to the suit.

512 U.S. at 487 (footnotes omitted).  The Court further held that

"a § 1983 cause of action for damages attributable to an

unconstitutional conviction or sentence does not accrue until the

conviction or sentence has been invalidated."  Id. at 489-90.

Specifically addressing, albeit in dicta, whether a § 1983

suit, for damages attributable to an allegedly unreasonable

search, would lie in advance of a judicial determination of the

invalidity of the related conviction, the Supreme Court said,

11

> For example, a suit for damages attributable to an
> allegedly unreasonable search may lie even if the
> challenged search produced evidence that was introduced
> in a state criminal trial resulting in the § 1983
> plaintiff's still-outstanding conviction.  Because of
> doctrines like independent source and inevitable
> discovery, and especially harmless error, such a § 1983
> action, even if successful, would not necessarily imply
> that the plaintiff's conviction was unlawful.  In order
> to recover compensatory damages, however, the § 1983
> plaintiff must prove not only that the search was
> unlawful, but that it caused him actual, compensable
> injury, which, we hold today, does not encompass the
> "injury" of being convicted and imprisoned (until his
> conviction has been overturned).

Heck, 512 U.S. at 487 n.7.

The circuits are split as to the proper interpretation of

footnote seven.  At least three circuits have held that footnote

seven creates a general exception to Heck for Fourth Amendment

unreasonable search and seizure claims.  See, e.g., Copus v. City

of Edgerton, 151 F.3d 646, 648 (7th Cir. 1998); Simmons v.

O'Brien, 77 F.3d 1093, 1095 (8th Cir. 1996); Datz v. Kilgore, 51

F.3d 252, 253 n.1 (11th Cir. 1995).  Other circuits permit such

claims to go forward only after the district court makes an

individualized determination that a favorable ruling in that case

would not undermine the related criminal conviction or pending

criminal proceedings.  See, e.g., Ballenger v. Owens, 352 F.3d

842 (4th Cir. 2003); Harvey v. Waldron, 210 F.3d 1008 (9th Cir.

2000); Shamaeizadeh v. Cunigan, 182 F.3d 391 (6th Cir.), cert.

denied, 528 U.S. 1021 (1999); Hudson v. Hughes, 98 F.3d 868, 872

(5th Cir. 1996); Woods v. Candela, 47 F.3d 545, 546 (2d Cir.),

cert. denied, 516 U.S. 808 (1995).  Cf. Beck v. City of Muskogee
Police Dept., 195 F.3d 553, 559 n.4 (10th Cir. 1999)(generally
disagreeing with courts that make an individualized
determination, but noting that the case before it was not the
"rare situation ... where all evidence was obtained as a result
of an illegal arrest").

Recently, the Third Circuit concluded that a Fourth
Amendment claim can be brought under § 1983, even without
favorable termination, if the district court determines that
success on the claim would not necessarily imply the invalidity
of the conviction.  Gibson, 411 F.3d at 435-39.  However, in
those cases in which a district court determines that success on
the § 1983 claim would imply the invalidity of the conviction,
the cause of action is deferred until the conviction is
overturned pursuant to Heck.  Id.  Adopting a fact-based approach
to interpreting footnote seven of Heck, the Third Circuit stated:

> . . . under Heck, a district court is required only to
> make a threshold determination as to whether a
> plaintiff's § 1983 claim, *if successful*, would have the
> hypothetical effect of rendering the criminal
> conviction or sentence invalid.  If this threshold is
> satisfied, the district court's analysis is at an end,
> and the Heck deferred accrual rule is triggered.

Id. at 451.

In this case, the question whether Blakeney's claim has
accrued is complicated by the fact that the state criminal
prosecution is ongoing.  Cf. Smith v. Holt, 87 F.3d 108 (3d Cir.

13

1996) (claims that would necessarily imply the invalidity of a future conviction that might be entered on a pending criminal charge do not accrue so long as the potential for a judgment in the pending criminal prosecution continues to exist), cert. denied, 519 U.S. 1041 (1996); Shamalizadeh, supra (same); Covington v. City of New York, 171 F.3d 117 (2d Cir.) (same), cert. denied, 528 U.S. 946 (1999).  If this unlawful search claim were permitted to proceed at this time, the very real possibility exists that the civil rights action might produce a result at odds with that of the criminal proceeding, the very evil that the Heck rule is intended to avoid.  See Heck, 512 U.S. at 484-85. Thus, to the extent that plaintiff seeks damages related to his criminal prosecution based on a claim of an unlawful search and seizure, it would have the hypothetical effect of rendering his future conviction invalid.  Accordingly, the Heck deferred accrual rule is triggered and this claim must be dismissed without prejudice as premature.

Moreover, to the extent that Blakeney is asserting that the search was unlawful to bar the seized evidence from use at his criminal trial, he must first raise this defense in his ongoing state criminal proceedings.  As indicated above, Blakeney apparently has not been convicted of the crimes for which he has been charged.  Thus, his criminal charges remain pending in state court, and he must raise any constitutional challenges asserted

14

here in his criminal case.  A federal court will not now intercede to consider issues that plaintiff has an opportunity to raise before the state court.  <u>See</u> <u>Younger v. Harris</u>, 401 U.S. 37 (1971).  It is not generally the role of the federal courts to interfere in pending state criminal cases.  The United States Court of Appeals for the Third Circuit has enunciated three requirements that must be met before <u>Younger</u> abstention may be invoked:

> (1) there are ongoing state proceedings that are judicial in nature;  (2) the state proceedings implicate important state interests;  and (3) the state proceedings afford an adequate opportunity to raise federal claims.  Whenever all three of these requirements are satisfied, abstention is appropriate absent a showing of bad faith prosecution, harassment, or a patently unconstitutional rule that will cause irreparable injury to the plaintiff.

<u>Port Auth. Police Benevolent Ass'n v. Port Auth. of New York and New Jersey Police Dept.</u>, 973 F.2d 169, 173 (3d Cir. 1992) (citing <u>Schall v. Joyce</u>, 885 F.2d 101, 106 (3d Cir.1989)).  In this case, it is clear that state proceedings implicating important state interests are ongoing, and that Blakeney has an opportunity to raise his claims in a hearing during that proceeding.  Therefore, because Blakeney has not yet been convicted, this Court is constrained by <u>Younger</u> to dismiss the Complaint in its entirety, without prejudice, as against the defendants for failure to state a claim upon which relief may be

granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and
1915A(b)(1).

B.   <u>False Arrest and Imprisonment</u>

Next, Blakeney complains that he was arrested and imprisoned
without probable cause.  It is well established in the Third
Circuit that an arrest without probable cause is a constitutional
violation actionable under § 1983.  <u>See</u> <u>Walmsley v. Philadelphia</u>,
872 F.2d 546 (3d Cir. 1989)(citing cases); <u>see also</u>, <u>Albright v.
Oliver</u>, 510 U.S. 266, 274 (1994)(a section 1983 claim for false
arrest may be based upon an individual's Fourth Amendment right
to be free from unreasonable seizures).  To state a claim for
false arrest, a plaintiff must allege two elements: (1) that
there was an arrest; and (2) that the arrest was made without
probable cause.  <u>Dowling v. City of Philadelphia</u>, 855 F.2d 136,
141 (3d Cir. 1988).  Thus, a defense to an unlawful arrest claim
is that the police officer defendants acted with probable cause.
<u>Sharrar v. Felsing</u>, 128 F.3d 810, 817-18 (3d Cir. 1997)(a key
element of a § 1983 unlawful arrest claim is that the police
officer arrested the plaintiff without probable cause); <u>Groman</u>,
47 F.3d at 636 ("an arrest based on probable cause could not
become the source of a [§ 1983] claim for false imprisonment").
To establish the absence of probable cause, a plaintiff must show
"that at the time when the defendant put the proceedings in
motion the circumstances were such as not to warrant an ordinary

16

prudent individual in believing that an offense had been committed." Lind v. Schmid, 67 N.J. 255, 262 (1975).[2] "Probable cause . . . requires more than mere suspicion; however, it does not require that the officer have evidence to prove guilt beyond a reasonable doubt." Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995). Rather, probable cause exists when the facts and circumstances are "sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense." Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (quoting Beck v. State of Ohio, 379 U.S. 89, 91 (1964)); Sharrar v. Felsing, 128 F.3d 810, 817 (3d Cir. 1997).[3]

Here, the Complaint indicates that Blakeney was taken into police custody in Virginia and transferred to New Jersey pursuant to a warrant on other charges to which plaintiff had waived extradition. Thus, Blakeney was already in custody pursuant to other charges which are not the subject of his false arrest and imprisonment claim. In addition, the new charges were based on

---

[2] A § 1983 claim for false arrest typically accrues on the date of the plaintiff's arrest. See Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998); Rose v. Bartle, 871 F.2d 331, 348-51 (3d Cir. 1989). In this instance, the warrants for Blakeney's arrest on new charges occurred on or after August 25, 2005; therefore, a § 1983 claim for false arrest accrued on that date, making this action timely.

[3] A grand jury indictment is affirmative evidence of probable cause sufficient to defeat claims for malicious prosecution and false arrest under § 1983. Gatter v. Zappile, 67 F. Supp. 2d 515, 519 (E.D.Pa. 1999), aff'd, 225 F.3d 648 (3d Cir. 2000).

information provided by police officers as witnesses and therefore, satisfied the probable cause requirement.  Thus, under these facts, probable cause for the arrest and detention is demonstrated and Blakeney's claim for false arrest and imprisonment must be dismissed for failure to state a claim.

Furthermore, to the extent that Blakeney is challenging the finding of probable cause, he must first raise this defense in his ongoing state criminal proceedings, pursuant to <u>Younger</u>, as more fully discussed above.  Therefore, because Blakeney has not yet been convicted, this Court is constrained by <u>Younger</u> to dismiss the claim of false arrest and imprisonment, without prejudice, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

C.   <u>Harassment and Police Misconduct</u>

Finally, Blakeney alleges that his right to due process was violated by defendants based on their harassment and misconduct in interrogating the plaintiff.  In particular, Blakeney asserts that defendants tried to surreptitiously record and transmit plaintiff's conversations with them; the defendants misrepresented themselves as plaintiff's attorneys to get plaintiff to come to them; and the defendants threatened plaintiff to encourage a confession.  Blakeney also claims that the defendants subjected him to bodily harm by causing plaintiff

to be labeled as a snitch.  There are no allegations that
plaintiff was actually threatened or harmed by other inmates.

These claims basically allege that plaintiff was subjected
to coercive interrogation but the police tactics did not result
in a confession or other self-incrimination by plaintiff.  In
fact, Blakeney continually declined to talk with the police,
asserting his right to counsel.  The question for this Court is
whether such a claim under these circumstances may constitute a
violation of substantive due process.

The Supreme Court has observed that "certain interrogation
techniques, either in isolation or as applied to unique
characteristics of a particular suspect, are so offensive to a
civilized system of justice that they must be condemned under the
Due Process Clause of the Fourteenth Amendment."  Miller v.
Fenton, 474 U.S. 104, 109 (1985).  The Court further held that,
under some circumstances, coercive interrogation alone may
violate a suspect's right to substantive due process, even when
no self-incriminating statement is used against the person
interrogated.  See Chavez v. Martinez, 538 U.S. 760, 780 (2003).
However, a due process violation will be recognized only where
the specific conduct alleged rises to the level of coercive
interrogation that "shocks the conscience."  County of Sacramento
v. Lewis, 523 U.S. 833, 846-47, n. 8 (1998)(substantive due
process rights are violated only when "the behavior of the

19

governmental officer is so egregious, so outrageous, that it may fairly be said to shock the conscience").

The Third Circuit has held that to establish a violation of substantive due process rights, the action alleged must be "so ill-conceived or malicious that it shocks the conscience." Miller v. City of Philadelphia, 174 F.3d 368, 375 (3d Cir. 1999)(quoting Lewis, 523 U.S. at 846). Mere negligence is not sufficient to meet this standard. Lewis, 523 U.S. at 847. The standard often used by the Supreme Court to determine whether an action has reached that level is the "deliberate indifference" standard. Id., 523 U.S. at 851. The Third Circuit acknowledged that the meaning of this "shocks the conscience" standard varies depending on the factual context of the case. Miller, 174 F.3d at 375; see also United Artists Theatre Circuit, Inc. V. Township of Warrington, 316 F.3d 392, 399-400 (3d Cir. 2003); Nicini v. Morra, 212 F.3d 798, 810 (3d Cir. 2000)("A plaintiff seeking to establish a constitutional violation must demonstrate that the official's conduct 'shocks the conscience' in the particular setting in which that conduct occurred").

Typically, "conscience shocking" provides relief for physical abuse. See Rochin v. California, 342 U.S. 165 (1952)(due process violated when evidence obtained by subjecting the suspect to an involuntary stomach pump). Some courts have suggested that "conscience shocking" behavior must be either

physically intrusive or violent, or strike at the basic fabric of a protected relationship, such as a parent-child relationship. See Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 623 (1st Cir. 2000). For instance, in the few cases where interrogation alone has supported a conscience-shocking claim, there have usually been at least some allegations of physical force or abuse. In Chavez, the Supreme Court remanded the case to the Ninth Circuit to determine whether a suspect had a "shocks the conscience" claim against police for conduct during the interrogation. The Ninth Circuit allowed the claim based in part on implications of physical abuse allegations that the officer had interfered with the medical treatment of the plaintiff while he screamed in pain. Martinez v. City of Oxnard, 337 F.3d 1091, 1092 (9th Cir. 2003).

In this case, the Court is hard pressed to find that the interrogation tactics used by the defendant police officers rose to the level of a coercive interrogation that shocks the conscience. Blakeney was not interrogated for hours. He was not physically abused or harmed during the interrogation sessions. Blakeney was already in custody on unrelated charges. Moreover, as soon as plaintiff invoked his right to counsel, the interrogations would cease and he would be returned to his cell or unit. No confession or admissions were elicited from plaintiff. Thus, the Court finds that the interrogations were

21

not so egregious or outrageous, that it may be fairly said to shock the contemporary conscience.

Indeed, the defendants' tricks to get a confession from Blakeney (*i.e.*, hiding a tape recorder device or cell phone, saying they were his attorneys to get plaintiff to come to the visiting room for interrogation) arguably are not even coercive. See United States v. Bezanson-Perkins, 390 F.3d 34, 41 (1st Cir. 2004)("trickery is not automatically coercion").  Thus, the alleged conduct of the police interrogation in this case falls more in line with those cases in which the police conduct is untoward or upsetting, yet does not rise to the level that shocks the conscience.  See Lewis, 523 U.S. at 855; Tinker v. Beasley, 429 F.3d 1324, 1329 (11th Cir. 2005).  Therefore, this claim will be dismissed for failure to state a claim.

V.   CONCLUSION

For all of the reasons set forth above, the Complaint must be dismissed with prejudice in its entirety, as against all defendants, for failure to state a cognizable claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  An appropriate Order follows.

S/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

Dated: April 7, 2006